## IN THE UNITED STATES DISTRICT COURT FOR
## THE SOUTHERN DISTRICT OF WEST VIRGINIA

### HUNTINGTON DIVISION

NURDIN SHAILOOKUL UULU,

                PETITIONER,

v.                              CIVIL ACTION NO. 3:26-0073

CARL ALDRIDGE, Superintendent,
Western Regional Jail;
VALERIE TOBIAS, Director,
ICE Pittsburgh Field Office;
TODD M. LYONS, Acting Director,
Immigration and Customs Enforcement;
KRISTI NOEM,
Secretary of the Department of Homeland Security;
PAM BONDI,
Attorney General of the United States,
in their official capacities,

                RESPONDENTS.

### MEMORANDUM OPINION AND ORDER

Pending before the Court is Petitioner Nurdin Shailookul Uulu's Verified Petition for Writ of Habeas Corpus. ECF No. 1. Also pending is a Motion to Dismiss filed by Federal Respondents ("the Government") Valerie Tobias, Director of ICE Pittsburgh Field Office; Todd M. Lyons, Acting Director of Immigration and Customs Enforcement; Kristi Noem, Secretary of the Department of Homeland Security; and Pam Bondi, Attorney General of the United States. ECF No. 23. Carl Aldridge, Superintendent of Western Regional Jail, is also a respondent.[1]

For the reasons set forth below, stated at the hearing on February 11, 2026, and in

---

[1] Mr. Aldridge responds separately that he "should be treated as nothing more than a nominal respondent" and "defers to the Federal Respondents' position." *Resp. by Carl Aldridge.* 2, ECF No. 16.

accordance with the previously entered Order, ECF No. 27, directing the immediate release of Petitioner, return of his belongings, and prohibiting re-arrest and detention absent specified conditions, the Court **GRANTS** Petitioner's Verified Petition for Writ of Habeas Corpus, ECF No. 1, and **DENIES** Respondents' Motion to Dismiss Petitioner's Petition for Writ of Habeas Corpus. ECF No. 23.

## I.    Background

According to the Petititon, Petitioner, a native of Kyrgyzstan and fixed resident of California, was paying taxes; in full compliance with immigration court requirements; and working, with work authorization, as a commercial truck driver when ICE took him into custody. *Pet.* ¶¶ 4, 6, 8, ECF No. 1. U.S. Department of Homeland Security Form I-213 and Form I-831, dated January 17, 2026, indicate that Petitioner was arrested on January 16, 2026, for "being illegally present in the U.S." at a weigh station in Hurricane, West Virginia, with the stop initiated for an "expired fuel tax." *See Form I-831*, at 2, Gov't's Ex. 2, ECF No. 22-1.[2] Since detention, Petitioner states he has not received an individualized custody determination or an opportunity to seek release on bond. *Pet.* ¶ 15.

The Petition states that years before, on April 9, 2023, Petitioner presented at a port of entry for his scheduled CBP One humanitarian parole appointment. *Pet.* ¶ 1. At that point, he was inspected by officials and paroled into the United States through April 6, 2024, pursuant to INA §

---

[2] The Court notes that this document contains inconsistent pronoun use when referring to Petitioner and says, "the subjects were placed under arrest" when there is only one "subject." *Id.* at 2–3. Additionally, the Government's response itself also contains errors of pronoun agreement, references two unrelated individuals as the petitioners, and addresses an APA claim that was not raised in the Petition. *Resp.* 2, 14. The high volume of individuals being arrested, detained, and petitioning for release is clearly leading to mistakes which is frustrating given the gravity and nature of the fundamental liberty interest that is at stake.

212(d)(5), with a Form I-94. *Pet.* ¶ 2; *Digital Form I-94*, Pet'r's Ex. 2, ECF No.1-2. Petitioner was

issued a "Notice to Appear" on his date of entry, providing him with a hearing date of November

9, 2023, indicating the basis for removal as INA § 212(a)(7)(A)(i)(I). *Notice To Appear*, Pet'r's

Ex. 3, ECF No. 1-3. Petitioner filed an application for asylum on April 17, 2024. *Application for

Asylum and for Withholding Removal*, Pet'r's Ex. 4, ECF No. 1-4. In association with his removal

proceedings, he has an individual hearing before an Immigration Court in California on April 7,

2027. *Notice of Internet-Based Hearing*, Pet'r's Ex. 6, ECF No. 1-6.

Petitioner filed this action pursuant to 28 U.S.C. § 2241, arguing his detention is in

violation of the Immigration and Nationality Act (INA); Due Process Clause of the Fifth

Amendment; and Suspension Clause of the U.S. Constitution. *Pet.* ¶¶ 14, 19, 81. The Government

filed a response and motion to dismiss on February 6, 2026, Petitioner filed a reply on February

10, 2026, and the Court heard argument on February 11, 2026. *Resp. to O.S.C. ("Resp.")*, ECF

No. 23; *Pet.'s Reply to Resp. ("Reply")*, ECF No. 26.

## II.    Legal Standard of Review

A petitioner may be entitled to habeas corpus relief if a district court determines the

petitioner "is in custody in violation of the Constitution or laws or treaties of the United States."

*Torrence v. Lewis*, 60 F.4th 209, 213 (4th Cir. 2023) (citations omitted); 28 U.S.C. § 2241(c)(3).

The petitioner has the burden of proving unlawful custody by a preponderance of the evidence.

*Post v. Boles*, 332 F.2d 738, 740 (4th Cir. 1964); *Belsai D.S. v. Bondi*, No. 25-cv-3682, 2025 WL

2802947, at *3 (D. Minn. Oct. 1, 2025). "The court shall summarily hear and determine the facts,

and dispose of the matter as law and justice require." 28 U.S.C. § 2243.

III.    Discussion

According to the Government, Petitioner has been lawfully detained pursuant to 8 U.S.C. § 1225(b). *Resp.* 13. Petitioner argues, if he is subject to any detention at all, it would be pursuant to 8 U.S.C. § 1226, and that, given the actions of the Government, his rights have still been violated. *Pet.* ¶ 14.

A.  Jurisdiction

As an initial matter, the Government moves the Court to dismiss, alleging that this Court lacks jurisdiction based on 8 U.S.C. §§ 1252(b)(9) and 1252(g). *Resp.* 2, 5–11. The Government acknowledges this Court has already rejected the same argument in *Simanca Gonzalez v. Aldridge et al.,* and for the same reasoning, the Court denies the Government's Motion to Dismiss. *Simanca Gonzalez*, CIV. A. No. 3:26-cv-0055, 2026 WL 313476, at *2–3 (S.D. W. Va. Feb. 5, 2026). The Court is not undertaking a review of an order of removal, so it is not barred under Section 1252(b)(9). *Id.* Section 1252(g) is a narrow limitation to judicial review that is "cabined to three discrete actions: a decision to *commence* proceedings, *adjudicate* cases, or *execute* removal orders," none of which are present in this case challenging detention. *Suri v. Trump*, No. 25-1560, 2025 WL 1806692, at *7 (4th Cir. July 1, 2025) (citation modified). The Fourth Circuit came to this conclusion relying on the Supreme Court "specifically reject[ing] the idea that § 1252(g) stripped federal courts of jurisdiction over habeas challenges to present immigration confinement." *Id.* (citing *Zadvydas v. Davis*, 533 U.S. 678, 688 (2001)).

Lastly, the Government argues any Fourth Amendment argument concerning the circumstances of the arrest cannot be reviewed by this Court under the same authority, but the Court does not undertake an analysis of that nature at this time. *Resp.* 23.

The Court has jurisdiction and proceeds with an analysis of the Government's asserted basis for detention.[3]

B. Basis for Detention

The Government claims that Petitioner is subject to mandatory detention under 8 U.S.C. § 1225(b)(2). That section provides that "in the case of an alien who is an *applicant for admission*, if the examining immigration officer determines that an alien *seeking admission* is not clearly and beyond a doubt entitled to be admitted, the alien *shall* be detained for a proceeding under section 1229a of this title." 8 U.S.C. § 1225(b)(2)(A) (emphasis added).

The Government claims Petitioner, as an individual present without admission, is an "applicant for admission" necessarily "seeking admission," for purposes of Section 1225(b)(2)(A). *Resp.* 13–16. As Petitioner argues, there would be no reason to include "seeking admission" within the Government's interpretation of Section 1225(b)(2) that mandates detention of all "present in the United States without admission and . . . subject to removal proceedings – regardless of how long the alien has been in the United States or how far from the border they ventured." *Reply* 8–9; *Resp*. 13. Further, the Government's interpretation violates the "rules against surplusage" and is incompatible with the longstanding due process protections afforded to undocumented individuals within the United States compared to those at the border. *Reply* 8–9 (citing *Lopez Benitez v. Francis*, 795 F.Supp.3d 475, 487–488 (S.D.N.Y. 2025) (citing *United States, ex rel. Polansky v.*

---

[3] As the Court rejects the Government's argument that judicial review is barred, the Court need not evaluate Petitioner's claim of a Violation of the Suspension Clause of the U.S. Constitution which has not been thoroughly briefed in this Petition. *Pet*. at 21–22. However, two other Courts in this District have persuasively and thoroughly addressed that the Suspension Clause is properly invoked in this context. *See Briceno Solano v. Mason*, CIV. A. No. 2:26-cv-00045, 2026 WL 311624, at *9 (S.D. W. Va. Feb. 4, 2026) (Johnston, J.); *see also Gutierrez Aroca v. Mason*, CIV. A. No. 2:26-cv-00057, 2026 WL 357872, at *16 (S.D. W. Va. Feb. 9, 2026) (Goodwin, J.).

*Exec. Health Res., Inc.*, 599 U.S. 419, 432 (2023) ("[E]very clause and word of a statute should have meaning.")); *Zadvydas*, 533 U.S. at 693 ("The distinction between an alien who has effected an entry into the United States and one who has never entered runs throughout immigration law .. . . But once an alien enters the country, the legal circumstance changes, for the Due Process Clause applies to all 'persons' within the United States, including aliens, whether their presence here is lawful, unlawful, temporary, or permanent." (citations omitted)).

This Court disagrees with this conflation of clauses, as it has before, and finds the Petitioner is not accurately categorized as "seeking admission." *Simanca Gonzalez,* 2026 WL 313476, at *4–5. He is an individual who was arrested within the interior of the United States after he was provided parole in 2023 to remain and has resided here since. *Reply* 10–11.

Additionally, looking at context, the Supreme Court distinguishes the statutory scheme at issue stating that, "U.S. immigration law authorizes the Government to detain certain aliens *seeking admission* into the country under §§1225(b)(1) and (b)(2)," and that "[i]t also authorizes the Government to detain certain aliens *already in* the country pending the outcome of removal proceedings under §§1226(a) and (c)." *Jennings v. Rodriguez*, 583 U.S. 281, 289 (2018) (emphasis added). Additionally, the Government's interpretation renders meaningless both a clause within Section 1225(b) and a large part of the Laken Riley Act, Pub. L. No. 119-1, 139 Stat. 3 (2025), amendment of the INA.

As has been the interpretation of the statute for decades prior, those within the United States without criminal records, as Petitioner was after he was granted parole, submitted a petition for asylum, received employment authorization, and was awaiting an immigration hearing, are not subject to detention under Section 1225(b)(2), rather, they are subject to discretionary detention of 8 U.S.C. § 1226(a). This interpretation is consistent with the overwhelming majority of district

court decisions rendering similar mandatory, unreviewed detentions of resident noncitizens without criminal records to be within the purview of 8 U.S.C. § 1226(a). *See, e.g. Briceno Solano v. Mason*, CIV. A. No. 2:26-cv-00045, 2026 WL 311624, at *15 (S.D. W. Va. Feb. 4, 2026) (Johnston, J.); *Gutierrez Aroca et al., v. Mason*, CIV. A. No. 2:26-cv-00057, 2026 WL 357872, at *17 (S.D. W. Va. Feb. 9, 2026) (Goodwin, J.); *Bethancourt Soto v. Soto*, No. 25-cv-16200, 2025 WL 2976572, at *7 (D.N.J. Oct. 22, 2025) (collecting cases); *Barco Mercado v. Francis*, No. 25-cv-6582 (LAK), 2025 WL 3295903, at *4 (S.D.N.Y. Nov. 26, 2025) (collecting cases); *Yao v. Almodovar*, No. 25-CV-9982, 2025 WL 3653433, at *10, *12 (S.D.N.Y. Dec. 17, 2025) (collecting cases).[4]

Petitioner's detention is governed by Section 1226(a). Section 1226, in part, provides that "[o]n a *warrant issued* by the Attorney General, an alien *may* be arrested and detained pending a decision on whether the alien is to be removed from the United States." 8 U.S.C. § 1226(a) (emphasis added). Under the discretionary detention of Section 1226(a), undocumented individuals "receive bond hearings at the outset of detention." *Jennings*, 583 U.S. at 287 (citing 8 C.F.R. §§ 236.1(d)(1), 1236.1(d)(1)). Under Section 1226(a), Petitioner's arrest would require a warrant or exception justifying the absence of one, and Petitioner would be entitled to an individualized custody determination, neither of which were seemingly satisfied here. *Id*; *Reply* 14.

---

[4] At the February 10, 2026, hearing, the Government raised that its interpretation was accepted by the Fifth Circuit's recent ruling in *Buenrostro-Mendez v. Bondi*, No. 25-20496, 2026 WL 323330, at *8 (5th Cir. Feb. 6, 2026). The Court declines to follow the majority's reasoning in *Buenrostro-Mendez*, and rather, finds the dissent persuasive. *Id.* at *10 (Douglas, J., dissenting) ("The majority stakes the largest detention initiative in American history on the possibility that 'seeking admission' is like being an 'applicant for admission,' in a statute that has never been applied in this way, based on little more than an apparent conviction that Congress *must have* wanted these noncitizens detained—some of them the spouses, mothers, fathers, and grandparents of American citizens. Straining at a gnat, the majority swallows a camel.").

In *Miranda v. Garland*, the Fourth Circuit found the procedure within Section 1226(a) to be constitutional when it involved an individualized custody determination by an immigration officer "almost immediately" after detention, and a second opportunity for a bond hearing before an Immigration Judge "soon thereafter." *Miranda*, 34 F.4th 338, 362 (4th Cir. 2022). Petitioner accurately states that he did not receive such treatment. *Reply* 15. While the Government is correct that the burden remains with the undocumented individual to justify receiving bond under discretionary detention of Section 1226(a), an opportunity to present that argument must be provided. *Resp*. 27. Petitioner has not received appropriate treatment considering he has been detained since January 16, 2026, without a neutral decisionmaker to determine the necessity of his detention. *Reply* 16. As such, even applying the requirements of Section 1226(a), which the Government does not even assert as a basis for detention, Petitioner is unlawfully detained.

C. Due Process

The Fifth Amendment provides that no person shall "be deprived of life, liberty, or property, without due process of law." U.S. Const. amend V. "[T]he Due Process Clause applies to all 'persons' within the United States, including aliens, whether their presence here is lawful, unlawful, temporary, or permanent." *Zadvydas v. Davis*, 533 U.S. 678, 693 (2001).

As a quick review, the Court evaluates due process rights under the balancing test contained within *Mathews v. Eldridge*, 424 U.S. 319 (1976). The *Mathews* framework calls for the consideration of (1) "the private interest that will be affected by the official action"; (2) "the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards"; and (3) "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." *Id.* at 335.

The Government argues that Petitioner does not allege what part of due process he was not afforded. *Resp.* 23. The Petitioner, however, claims that, given his authorized release into the interior of the United States, his timely application for asylum, work authorization, and placement into standard removal proceedings, Petitioner is entitled to due process and an opportunity to be heard prior to detention. *Pet.* ¶¶ 49–50; *Reply* 13.

The deprivation of physical liberty "lies at the heart of" due process clause protections. *Zadvydas*, 533 U.S. at 689. Respondents have deprived Petitioner of his physical liberty for over three weeks. Petitioner argues that after three years, he is embedded in his community, and the Government does not have any reasonable interest in subjecting him to expedited removal as if he had just arrived to this country. *Pet.* ¶¶ 76, 78. The Court agrees.

The risk of erroneous deprivation is great considering the Government wrongly contends it is holding Petitioner pursuant to the mandatory and unreviewed detention provision of Section 1225(b)(2). Failing the *Mathews v. Eldridge* framework, the first two considerations outweigh the Government's interest in detention without bond, which under Section 1226(a) occurs based on the Immigration Judge's discretionary determination that there is a risk of harm to the public or risk of failure to appear. *See* 8 C.F.R. §§ 236.1(c)(8), 1236.1(c)(8).[5] Further, as Judge Johnston persuasively indicates, the significant financial and societal costs in detention of this nature counter any interest the Government may have in withholding a bond hearing at the outset of the detention. *Briceno Solano*, 2026 WL 311624, at *19.

The Government, in the alternative, urges the Court to order a bond hearing rather than releasing Petitioner. *Resp.* 26. First, the Government maintains that Petitioner's detention is

---

[5] The Government has not indicated either circumstance is present.

authorized under Section 1225(b)(2) which does not provide for a custody determination. As such, the relief of a bond hearing would be misplaced. Additionally, the violation of Petitioner's due process has already resulted in nearly a month-long deprivation of physical liberty. Finally, the Court agrees that ordering a bond hearing would be futile given the Board of Immigration Appeals decision in *Matter of Yajure Hurtado*, 29 I. & N. Dec. 216 (BIA 2025). *Reply* 13–14. The *Hurtado* decision affirms that Immigration Judges' lack authority to provide bond hearings for those categorized in the Government's interpretation of Section 1225(b)(2). *Id.* at 220.

For the foregoing reasons, the Court finds Petitioner's release is the appropriate remedy.

### D.  Conclusion

Accordingly, the Court granted Petitioner's Verified Petition for Writ of Habeas Corpus (ECF No. 1) and denied Respondents' Motion to Dismiss (ECF No. 23). The Court ordered Respondents to release Petitioner from custody immediately and that Petitioner's property is returned to him. Further, the Court prohibited Respondents from re-arresting and detaining Petitioner absent a determination by a neutral and detached decisionmaker or change in circumstance justifying such detention.[6]

The Court **DIRECTS** the Clerk to send a copy of this Memorandum Opinion and Order to counsel of record and any unrepresented parties.

ENTER:        February 12, 2026

ROBERT C. CHAMBERS
UNITED STATES DISTRICT JUDGE

---

[6] The Court notes that in similar cases since Petitioner's, the Court has ordered the prohibition of Respondents from re-arresting and detaining petitioners in totality, however, the Court will leave the disposition as is based on the relief requested. *Pet.* at 23.

-10-